O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ESMERALDA GUZMAN, | ) | NO. CV 13-05380-MAN |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | AND ORDER |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) | |

On July 30, 2013, plaintiff filed a Complaint seeking review of the denial of her application for supplemental security income ("SSI"). (ECF No. 3.) On September 4, 2013, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (ECF No. 11.) On March 27, 2014, the parties filed a Joint Stipulation, in which plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings. (ECF No. 15 at 24-25.) The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On January 19, 2010, plaintiff filed an application for SSI. (Administrative Record ("A.R.") 126.) Plaintiff, who was born on April 16, 1974 (*id.*),[1] claims to have been disabled since October 1, 2007, due to a work injury to her right hand, surgery on that hand, hand movement loss, and right shoulder injury (*id.* 126, 140). Plaintiff has past relevant work experience as a machine operator. (*Id.* 53, 141.)

After the Commissioner denied plaintiff's claim initially, and upon reconsideration, plaintiff requested a hearing. (A.R. 27.) On February 27, 2012, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Mary L. Everstine (the "ALJ"). (*Id.* 41, 42-52.) Vocational expert ("VE"), Sharon Spaventa, also testified. (*Id.* 53-56) On March 9, 2012, the ALJ denied plaintiff's claim. (*Id.* 27-34.) The Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (*id.* 6-11), making the ALJ's decision the final decision of the Commissioner. That decision is now at issue in this action.

**SUMMARY OF ADMINISTRATIVE DECISION**

In her March 9, 2012, decision, the ALJ found that plaintiff has not engaged in substantial gainful activity since January 19, 2010, the application date. (A.R. 29.) The ALJ determined that plaintiff has the following severe impairments: "bilateral carpal tunnel syndrome status post right carpal tunnel release and right neuroplasty (January 2002); status post left carpal tunnel release and left ulnar nerve decompression (October 2007); status post right shoulder subacromial decompression and debridement (September 2009); and obesity." (*Id.*) However, the ALJ also concluded that plaintiff does not have an impairment or combination of impairments that meets

---

[1] On the date the application was filed, plaintiff was 35 years old, which is defined as a younger individual. (A.R. 33 (citing 20 C.F.R. § 416.963).)

or medically equals one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). (*Id.*)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform light work with the following limitations: lifting/carrying no more than ten pounds frequently and 20 pounds occasionally; standing/walking and sitting for no more than about six hours each in an eight-hour workday; only occasional climbing, balancing, stooping, kneeling, crouching, overhead reaching with the dominant right upper extremity, and intensive (more than 15 minutes per hour) precision fingering such as keyboarding; no crawling, prolonged pushing/pulling with bilateral upper extremities, repetitive power gripping or squeezing; and frequent but not constant fine manipulation. (A.R. 29-30.) In making this finding, the ALJ considered the medical evidence and opinions of record and the subjective symptom testimony of plaintiff, whom the ALJ found was not credible to the extent her statements were inconsistent with the RFC. (*Id.* 30-32.) The ALJ stated that she also gave great weight to the opinions of the agreed orthopedic medical examiner, Dr. Elmore G. Smith, and the two state agency medical consultants, Dr. Keith Jay Wahl, an ear, nose, and throat doctor and Fellow with the American College of Surgeons, and Dr. Anne Khong, an opthamologist. (*Id.* 32; *see also* A.R. 270 (Dr. Wahl's Medical Consultant's Code is "08"), 315 (Dr. Khong's Medical Consultant's Code is "28"); Completing Items 30-33, Social Security Administration Program Operation Manual System ("POMS") § DI 26510.090(D).) The ALJ gave little weight to the opinion of plaintiff's treating physician, Dr. Mark T. Montgomery, a board certified orthopedic and hand surgeon. (A.R. 32.)

Relying on the testimony of the VE, the ALJ found that plaintiff is unable to perform her past relevant work. (A.R. 33.) Based on plaintiff's age, education,[2] work experience, and RFC,

---

[2] The ALJ determined that plaintiff "has a high school education and is able to communicate in English." (A.R. 33 (citations omitted).) The ALJ also noted that plaintiff was "evasive" about her ability to communicate in English, and relied on a Spanish interpreter at the hearing. (*Id.*) She noted that plaintiff had attended high school in the United States from 10th through 12th grade, received a high school diploma, took the citizenship examination in English, and has two children, ages 6 and 7, who attend school. (*Id.*) Based on this, the ALJ stated that

3

as well as the testimony of the VE, the ALJ found that plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," including the jobs of retail marker, DOT 209.587-034, and hotel/motel housekeeper, DOT 323.687-014. (*Id.* 34, 55.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

---

"it is implausible" that plaintiff would be unable to communicate in basic English. (*Id.*) The Court notes, however, that an interpreter was present at each of plaintiff's visits to her treating physician, as well as during her agreed medical examinations with Dr. Smith. In any event, the VE testified that plaintiff could still perform the job of housekeeper, even if she could not communicate in English. (*Id.* 34, 56.)

4

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r of Soc. Sec., 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Carmickle v. Comm'r of Soc. Sec., 533 F.3d 1155, 1162 (9th Cir. 2008).

## DISCUSSION

Plaintiff asserts that the ALJ failed to properly consider the opinion of her treating physician, Dr. Montgomery, a board certified orthopedic and hand surgeon who had treated plaintiff for her alleged impairments since September 1999. (Joint Stip. at 4-15, 22-24; A.R. 349.) An ALJ is obligated to take into account all medical opinions of record. 20 C.F.R. §§ 404.1527(c), 416.927(c). However, in the hierarchy of physician opinions considered in assessing a social security claim, the opinion of a treating physician is entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician, and the weight afforded a non-examining physician's testimony depends on the degree to which he provided supporting explanations for his opinions. Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)); see also 20 C.F.R. § 404.1527(c). The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to know and observe the claimant. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

When a treating or examining physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons. Ghanim v. Colvin, __ F.3d __, 2014 WL 4056530, *5 (9th Cir. 2014); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). When, as here, it is contradicted by another doctor, a treating or examining physician's opinion may only be rejected if, after considering the factors set out in 20 C.F.R. § 416.927(c)(2)-(6) for evaluating medical opinions, the ALJ articulates "specific and legitimate" reasons supported by substantial evidence in the record.[3] Garrison, 759 F.3d at 1012; Orn, 495 F.3d at 632. Accordingly, an ALJ confronted with conflicting medical opinions must consider, *inter alia*, the length of the treatment relationship and the frequency of examination; the medical specialties of the various medical sources; the extent to which the medical opinions are supported by explanations; and the consistency of each medical opinion with the record as a whole. 20 C.F.R. § 416.927(c)(2)-(6); *see also* Orn, 495 F.3d at 631.

Here, plaintiff contends that the ALJ failed to properly consider the February 19, 2012, "Physical Residual Functional Capacity Questionnaire" completed by her treating physician, Dr. Montgomery. (Joint Stip. at 4-15, 22-24; *see also* A.R. 349-52.) Specifically, she contends that the ALJ failed to "articulate a single legitimate reason" for dismissing Dr. Montgomery's opinions. (Joint Stip. at 11-12, 15.)

In the questionnaire, Dr. Montgomery indicated that he had been treating plaintiff since September 1999, for bilateral forearm tendinitis, right pisotriquetral synovitis,[4] and status post

---

[3] When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not "substantial evidence." Orn, 495 F.3d at 632. However, when an examining physician provides "independent clinical findings that differ from the findings of the treating physician," such findings *are* "substantial evidence" and provide a sufficient basis for rejecting the opinion of the treating doctor. *Id.* Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence or (2) findings based on objective medical tests that the treating physician has not herself considered. *Id.*

[4] Pisotriquetral synovitis is the inflammation of the joint lining -- the synovium -- in the pisotriquetral joint, a joint in the wrist.

bilateral carpal tunnel release and had repeatedly operated on plaintiff's arms and shoulders. (A.R. 349.) With regard to plaintiff's RFC, Dr. Montgomery indicated in relevant part that plaintiff could do a low stress job with the following limitations: she could rarely lift ten pounds; she could perform head movements only occasionally; she was significantly limited in her ability to reach, handle, and finger; and she could only grasp, finger, and reach 20 percent of the time during an eight-hour workday. (*Id.* 350-52.)

The ALJ found that Dr. Montgomery's assessment of plaintiff's RFC was inconsistent with the opinions of the two State agency medical consultants, Dr. Anne Khong and Dr. Keith Jay Wahl, and the agreed orthopedic medical examiner, Dr. Elmore G. Smith, who examined plaintiff intermittently in connection with her workers' compensation claim. (*See* A.R. 32.) The Court agrees that Dr. Montgomery's opinion conflicts to varying degrees with the opinions of the two State agency medical consultants. Dr. Khong, an opthamologist, found that plaintiff was limited to, *inter alia*, lifting/carrying ten pounds frequently and 20 pounds occasionally and "fingering (fine manipulation)" but was not limited in reaching -- including overhead reaching -- pushing and/or pulling, and "handling (gross manipulation)." (A.R. 31; *see also* A.R. 311-12 (11/16/2010 report).) Dr. Wahl, an ear, nose, and throat doctor, also found that plaintiff could lift ten pounds frequently and 20 pounds occasionally, but, unlike Dr. Khong, found that plaintiff was limited in reaching, handling, fingering, and feeling. (A.R. 31; *see also id.* 267-70 (04/27/10 report).)

However, it is less clear the extent to which Dr. Montgomery's opinion conflicts with the opinion of Dr. Smith, the agreed orthopedic medical examiner who examined plaintiff in connection with her workers' compensation claim. Dr. Smith opined that plaintiff's work restrictions include: no heavy lifting, repetitive overhead use activities, prolonged forceful pushing/pulling; no "repetitive gripping, squeezing, and prolonged fine manipulation use activities" with plaintiff's right forearm, wrist, or hand; and no "very prolonged gripping, squeezing, and very prolonged fine manipulation use activities" with plaintiff's left wrist or hand. (A.R. 31; *see also id.* 287 (report dated 05/17/2010).) Because Dr. Smith used terminology that is specific to the

7

workers' compensation context, it is unclear to what extent, if it at all, his assessment of plaintiff's work restrictions conflicts with Dr. Montgomery's assessment of plaintiff's residual functional capacity. (*Compare* A.R. 287 *with id.* 350-52); *see also* Booth v. Barnhart, 181 F. Supp.2d 1099, 1105 (C.D. Cal. 2002) ("While the ALJ's decision need not contain an explicit 'translation' it should at least indicate that the ALJ recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and took those differences into account in evaluating the medical evidence.").

Nevertheless, because Dr. Montgomery's assessment of plaintiff's residual functional capacity was contradicted by the opinions of the State agency medical consultants, the ALJ was entitled to discredit Dr. Montgomery's opinion upon articulating specific and legitimate reasons for doing so. *See* Lester, 81 F.3d at 830-31. Here, the ALJ identified two reasons for rejecting Dr. Montgomery's opinion: (1) it was "significantly more restrictive than his prior residual functional capacity findings;" and (2) it was not supported by the underlying documentation and was, in fact, contradicted by clinical notes that "indicate[d] significant bilateral strength and the absence of atrophy of the hand or shoulder muscles." (A.R. 32.)

Plaintiff contends that the ALJ's first reason for rejecting Dr. Montgomery's 2012 opinion -- its inconsistency with Dr. Montgomery's "prior residual functional capacity findings" -- is not legitimate, because the ALJ improperly characterized Dr. Montgomery's "work restrictions expressed in worker's compensation terms" as "residual functional capacity findings." (Joint Stip. at 11-12.) Specifically, plaintiff states that because Dr. Montgomery's pre-2012 opinions concerned plaintiff's workers' compensation claim, they identified actions plaintiff should not perform as opposed to actions that plaintiff *could* perform. (*Id.* at 12.) She contends that the ALJ failed to recognize the differences between Dr. Montgomery's worker's compensation assessments and his Social Security disability assessments. (*Id.* (citing Booth, 181 F. Supp.2d at 1105; Desrosiers, 846 F.2d at 576.)

Although workers' compensation disability evaluations are not controlling in Social Security cases, an ALJ must nevertheless determine what inferences may "logically [flow] from the evidence." Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996); Desrosiers, 846 F.2d at 576; Booth, 181 F. Supp. 2d at 1104. Accordingly, an ALJ must "translate" terms of art contained in such medical terminology in order to accurately assess the implications of those opinions for the Social Security disability determination. Desrosiers, 846 F.2d at 576. "While the ALJ's decision need not contain an explicit 'translation,' it should at least indicate that the ALJ recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and took those differences into account in evaluating the medical evidence." Booth, 181 F. Supp. 2d at 1105.

Here, however, the ALJ conflated the findings that Dr. Montgomery made in the workers' compensation context with the findings that Dr. Montgomery made in the social security context without acknowledging any differences between the contexts. (*See* A.R. 32 ("February 2012 medical opinion of Dr. Montgomery is significantly more restrictive than his prior residual functional capacity findings"); *see also id.* 231-62 (Dr. Montgomery's workers' compensation reports), 349-52 (Dr. Montgomery's physical residual functional capacity questionnaire)). In doing so, the ALJ erred by failing to either acknowledge that the terms used by Dr. Montgomery in the workers' compensation context have different meanings than those in the social security context or "translate" Dr. Montgomery's workers' compensation findings into Social Security terms. *See* Desrosiers, 846 F.2d at 576; Booth, 181 F. Supp. 2d at 1105. The ALJ also assumed that Dr. Montgomery's 2012 opinion that plaintiff could only grasp, finger, and reach 20 percent of the time during an eight-hour workday was more restrictive than his prior workers' compensation work restrictions that precluded plaintiff from the "heavy, repetitive, or forceful use" of her hands. (*See, e.g., id.* at 231-34, 236-42, 244-46, 301, 306, 309, 327-30, 353-55.) However, the ALJ's assumption has no support in the record. Because the ALJ did not adequately consider the different meanings of the terms used by Dr. Montgomery in the workers' compensation and Social Security contexts, the ALJ's reference to Dr. Montgomery's workers' compensation findings was

not a legitimate reason to discount Dr. Montgomery's assessment of plaintiff's RFC.

Plaintiff contends that the ALJ's second reason for rejecting Dr. Montgomery's 2012 opinion -- its lack of support in the underlying documentation -- is also not legitimate, because Dr. Montgomery's 2012 RFC assessment is supported by his clinical findings. (*See* Joint Stip. at 13-14.) The Court agrees. Although the ALJ stated that Dr. Montgomery's "clinical examination indicate[d] significant bilateral strength and the absence of atrophy of the hand or shoulder muscles," the ALJ failed to support this statement with a citation to the record. (*See* A.R. 32.) Further, contrary to the ALJ's interpretation of Dr. Montgomery's findings, Dr. Montgomery consistently observed that plaintiff's "[g]rip strength is diminished." (*E.g., id.* 231, 236-42, 245-48, 301, 309, 327-30, 353-55.) The last report in the record that included that observation was written in March 2012. (*Id.* 353.)

Dr. Montgomery also occasionally made more detailed assessments of plaintiff's grip strength. For example, in 2008, he estimated that plaintiff had lost 60% of her grip strength in her right hand and 45% of her grip strength in her left hand. (A.R. 253.) Two years later, in April 2010, he estimated that plaintiff had "lost 55% of her grip strength in the right, dominant hand and 30% of her grip strength in the left, nondominant hand." (*Id.* 306.) These assessments suggest that plaintiff's grip strength was both substantially diminished, particularly in her right hand, and was not improving significantly over time. Dr. Montgomery's assessments of plaintiff's strength are also consistent with the findings of the orthopedic agreed medical examiner, Dr. Smith.[5] Thus, the ALJ's interpretation of Dr. Montgomery's clinical findings was not supported by the record, and her determination that Dr. Montgomery's RFC assessment conflicted with those

---

[5] Specifically, the orthopedic agreed medical examiner in the workmen's compensation context, Dr. Elmore Smith, agreed that plaintiff's Jamar testing indicated approximately 60% loss of strength in her right arm and hand. (A.R. 206 (in report dated 12/9/2008, Dr. Smith stated that Jamar testing showed a 60% loss of right upper extremity strength); *id.* 285 (in report dated May 17, 2010, Dr. Smith stated that the Jamar averaging indicates a 60% decrease of plaintiff's right grip strength).) Dr. Smith also observed diminished grip strength in plaintiff's left hand. (A.R. 285.)

findings was not a legitimate reason for discounting that assessment. *See* Tackett v. Apfel, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (finding it inappropriate for the ALJ to substitute his own medical judgment for that of a treating physician).

In response to plaintiff's contentions, the Commissioner argues that the ALJ properly discounted Dr. Montgomery's opinion, because it was based on plaintiff's subjective complaints of pain that the ALJ found were not credible. (Joint Stip. at 20-21.) However, the ALJ did not refer to plaintiff's subjective complaints when he explained his reasons for according Dr. Montgomery's 2012 opinion little weight. (*See generally* A.R. 30-32.) Accordingly, the Commissioner's attempt to salvage the ALJ's decision fails, because this Court is required "to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r, Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009); Stout, 454 F.3d at 1054 (stating that the court is "constrained to review the reasons the ALJ asserts" for the denial of benefits and "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision" (internal quotation marks and citations omitted)).

Based on the foregoing, the Court finds that ALJ's reasons for crediting the opinions of the two consulting physicians, neither of whom were orthopedic specialists, over the opinion of plaintiff's treating physician, a board certified orthopedic and hand surgeon with over a decade-long treatment relationship with plaintiff, were not legitimate. Accordingly, reversal and remand is appropriate.

**II.     Remand For An Award Of Benefits Is Appropriate.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Under the credit-as-true rule, a district court should remand for an award of benefits when

the following three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Garrison, 759 F.3d at 1020. The third of these conditions "incorporates . . . a distinct requirement of the credit-as-true rule, namely that there are no outstanding issues that must be resolved before a determination of disability can be made." *Id.* at 1020 n.26; *see also* Harman, 211 F.3d at 1179-81 (where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate).

Here, all three conditions are satisfied: (1) the record has been fully developed; (2) the ALJ failed to provide legally sufficient reasons for rejecting Dr. Montgomery's medical opinion; and (3) the VE opined that there are no jobs in the national economy that plaintiff could perform with the level of limitation described by Dr. Montgomery in his 2012 RFC assessment (*See* A.R. 54, 352). Further, after considering the record as a whole, the Court does not have "serious doubt" that plaintiff is, in fact, disabled. *See* Garrison, 759 F.3d at 1021 (where "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," the court retains flexibility to remand for further proceedings even though all conditions of the credit-as-true rule are satisfied); *see also* Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) (court has "some flexibility" in applying the credit-as-true rule when the ALJ's findings are so insufficient that the court cannot determine whether the rejected testimony should be credited as true). As explained above, Dr. Montgomery had treated plaintiff for her alleged impairments since 1999 and the record contains well over one hundred pages documenting his findings. Further, Dr. Montgomery's findings are both internally consistent and similar to the findings of Dr. Smith, the agreed orthopedic medical examiner, who saw plaintiff in connection with her workers' compensation claim. Finally, unlike the State agency medical consultants whose specialties were

opthamology and ear, nose, and throat medicine, Dr. Montgomery's opinions about plaintiff's RFC were related to his area of specialty as a board certified orthopedic and hand surgeon. Accordingly, after reviewing the record as a whole, the Court can find no assessment of plaintiff's RFC that conflicts with Dr. Montgomery's opinion and should be accorded greater weight.

Thus, the matter must be remanded to the ALJ for the calculation and award of benefits. To hold otherwise would subject plaintiff to the "'heads [the Commissioner] win[s]; tails, let's play again' system of disability benefits adjudication" that the credit-as-true rule is intended to prevent. *See* Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citation omitted).

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for the award of benefits consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: October 3, 2014

*Margaret A. Nagle*
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE